**SIGNED THIS: December 11, 2008**

                                              _____
                                              **MARY P. GORMAN**
                                              **UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | In Bankruptcy |
| RICHARD R. BURRELL and | ) | |
| VICKY L. BURRELL, | ) | Case No. 08-71716 |
| | ) | |
| Debtors. | ) | |

# O P I N I O N

This matter is before the Court on the Objection to Chapter 13 Plan and Objection to CMI[1] filed by John H. Germeraad, Chapter 13 Trustee ("Trustee") and the Response thereto filed by Richard R. Burrell and Vicky L. Burrell (collectively "Debtors"). The sole

---

[1] With the acronym CMI, Trustee refers to Official Form 22C – Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, filed in this case on July 17, 2008, and referred to in this Opinion as "Form B22C" or simply "B22C".

-1-

issue in this case is one of first impression.  Specifically, the question is whether the definition of "current monthly income" contained in the Bankruptcy Code encompasses all income which was received during the prescribed six-month period, or whether the income must have been both received as well as earned during that period.  For the reasons set forth below, the Court finds that "current monthly income" consists of income received during the prescribed six-month period, irrespective of when it was earned.  Accordingly, Trustee's Objection to Chapter 13 Plan and Objection to Debtors' Form B22C will be sustained.

On July 17, 2008, Debtors filed their bankruptcy petition, schedules, Form B22C, and Chapter 13 Plan.  Debtors propose to make monthly plan payments of $150 for a duration of 36 months.  On August 18, 2008, Trustee filed his Objection to Chapter 13 Plan and Objection to CMI.  Trustee contends that the calculation on Debtors' B22C understates Debtors' income during the prescribed six-month period, and that, accordingly, plan confirmation should be denied.  If their Chapter 13 case is to proceed, Trustee argues that the Debtors should be required to file an Amended B22C and an Amended Plan.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") applies to all bankruptcy cases filed on or after October 17, 2005, of which this case is one.  Several of the new concepts and provisions of the Bankruptcy Code under BAPCPA must be

reviewed in order to frame the issue before the Court in this case.

The term "current monthly income" is defined at §101(10A) to mean:

> the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the [prescribed] 6-month period . . .

11 U.S.C. §101(10A).

Form B22C was developed to assist in calculating a debtor's current monthly income, which is necessary in order to determine the "applicable commitment period",[2] and may, depending on a debtor's annualized current monthly income, be utilized to calculate a debtor's reasonably necessary expenses and disposable income. These calculations are critical in determining whether a proposed Chapter 13 plan may be confirmed. All Chapter 13 debtors are required to file a Form B22C with their petition. Fed.R.Bankr.P. 1007(b)(6).

---

[2] The concept of an "applicable commitment period" is introduced by 11 U.S.C. §1325(b)(1)(B), and addresses the durational requirement for a Chapter 13 plan. It provides that, generally, a court may not approve a plan unless it provides that all of a debtor's projected disposable income to be received in the applicable commitment period will be applied to the plan. *See* 11 U.S.C. §1325(b)(1)(B).

The term "applicable commitment period" is actually defined in 11 U.S.C. §1325(b)(4)(A) as (i) 3 years, or (ii) not less than five years if the "current monthly income" of the debtor and the debtor's spouse, when multiplied by 12, is not less than the median family income of a similarly-sized household in the applicable state. *See* 11 U.S.C. §1325(b)(4)(A).

Form B22C - Part I - Report of Income - consists of lines 1 through 11.  Line 2 of the B22C requires debtors to list their "gross wages, salary, tips, bonuses, overtime, commissions."  In this case, Mr. Burrell's line 2 income was shown as $3,084.41, and Mrs. Burrell's line 2 income was shown as $1,600.49.  Debtors listed no other income from any other source on the other lines of Part I, so their total monthly income on line 11 was shown as the aggregate of $3,084.41 and $1,600.49, which is $4,684.90.

Part II of Form B22C provides for the calculation of the §1325(b)(4) commitment period.  At Part II, a debtor is directed to annualize current monthly income by multiplying the results of Part I by the number 12.  Here, Debtors multiplied $4,684.90 by 12, resulting in an annualized income of $56,218.80.  According to line 16 of Debtors' B22C, the applicable median family income for a household of two (Debtors have no dependents) in Illinois is shown as $56,545.[3]  Next, in accordance with the formula set forth at §1325(b)(4), Part II requires a comparison of a debtor's annualized income with the applicable median family income for a comparably-sized household.  If the amount of a debtor's annualized income is equal to or less than the applicable median income, the debtor is directed to check the box on the B22C indicating that the commitment period is three years.  Because the median income

---

[3] This figure is not disputed and may be verified by U.S. Census Bureau data reported on the U.S. Trustee's website.  See *www.usdoj.gov/ust/*.

applicable to Debtors' household exceeded their household's annualized income, Debtors checked the box for a three-year commitment period and proposed a three-year Chapter 13 Plan.

A debtor whose annualized current monthly income falls below the applicable median family income for a household of the same size in the same state calculates reasonably necessary expenses by setting forth actual expenses on the required Schedule J.  This is what the Debtors have done in this case.  However, for a debtor whose annualized current monthly income exceeds the median income of households of the same size in the same state, reasonably necessary expenses are "determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)" of the Code.  *See* 11 U.S.C. §1325(b)(3).

Part III of Form B22C determines whether or not §1325(b)(3) is utilized for determining disposable income.  If it is to be utilized, debtors must complete Part IV of Form B22C, which limits the deductibility of certain expenses from a debtor's income for purposes of determining disposable income under §1325(b)(2) at Part V of Form B22C.  In this case, because Debtors' annualized current monthly income was shown as less than the applicable median family income at Part III, lines 21 and 22 of the B22C, Debtors checked the box at line 23 indicating that "[d]isposable income is not determined under §1325(b)(3)".  Accordingly, Debtors did not complete Part IV of the B22C which calculates the allowable

deductions from income for "over-the-median" debtors, nor did they complete Part V of the B22C.

Trustee objected to Debtors' B22C and contends that a five-year commitment period is required for any plan to be confirmed in this case. In his objection, Trustee correctly asserts - and it is undisputed - that the prescribed six-month period in this case would be January 1, 2008, through June 30, 2008. Trustee contends that, based upon a pay stub issued to Mr. Burrell by his employer for the pay period of June 15, 2008, through June 21, 2008, gross income to date was listed as $19,006.44, which is an average of $3,167.74 per month, not the $3,084.41 shown on Debtors' B22C at line 2. Trustee further contends that, based upon a pay stub from her employer received by Mrs. Burrell on June 19, 2008, her year-to-date income was $10,651.96, which is an average of $1,775.33 per month, not the $1,600.49 shown on Debtors' B22C at line 2. Based upon these calculations, Trustee asserts that Debtors' annualized current monthly income is $59,316.84, not the $56,218.80 shown at line 15 of Debtors' B22C. If Trustee's figure is correct, Debtors' annualized current monthly income would exceed the applicable median family income for a household of two persons in Illinois and, consequently, the applicable commitment period under §1325(a)(4) would be not less than five years. Additionally, if Trustee's figure is correct, Part III, line 21 of Debtors' B22C would show a figure higher than the applicable median family

-6-

income, thereby requiring that Debtors' disposable income be determined pursuant to §1325(b)(3). Debtors would, therefore, be required to complete Parts IV and V of their Form B22C.

In their Response to Trustee's Objection, Debtors do not dispute any of the factual allegations or numeric calculations made by Trustee. They contend, however, that Trustee misreads and misinterprets the following portion of the definition of current monthly income found at 11 U.S.C. §101(10A):

> . . . the average monthly income from all sources that the debtor **receives** (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, **derived** during the [prescribed] 6-month period . . .

11 U.S.C. §101(10A) (emphasis added).

Debtors contend that the statute requires that "current monthly income" must not only be **received** during the six-month period, but that it must also be **derived** during that period. Debtors argue that "derived" as used in this statute is a limiting term describing the income's origins, essentially stating that the work, service, or action required for the income to be earned, and therefore paid, must take place during the six-month period in order for it to be included in the B22C calculation. Debtors proffer that the use of both words - "received" and "derived" - indicates that Congress intended to impose a two-part precondition for inclusion of income in the definition of "current monthly income": (i) that the income was received during the prescribed

six-month period, and (ii) that the work, service, or action required in order for the income to be received was performed during the six-month period.

Trustee counters that the terms "received" and "derived" are synonymous as used in §101(10A) and that it is inferential that B22C calculations are to be made on a cash basis, *i.e.* income is included when it is received, not when it is earned.

When courts interpret a statute, they look first to its language. Greenfield Mills, Inc. v. Macklin, 361 F.3d 934, 954 (7th Cir. 2004).  The first rule of statutory construction is to give words their plain meaning. Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004); U.S. v. Jones, 372 F.3d 910, 912 (7th Cir. 2004); In re Baker, 430 F.3d 858, 860 (7th Cir. 2005).  Absent specific statutory definitions, words in a statute are presumed to have their ordinary or natural meaning. Smith v. U.S., 508 U.S. 223, 228, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138 (1993).  If that language is plain, the court's only function is to enforce it according to its terms.  U.S. v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (citation omitted).  When a statute's language is ambiguous, courts should look to the legislative history of the statute to guide the interpretation.  Kelly v. Wauconda Park District, 801 F.2d 269, 270 (7th Cir. 1986) (citation omitted).

If possible, each word in a statute must be given some

-8-

operative effect. <u>Walters v. Metropolitan Educational Enterprises, Inc.</u>, 519 U.S. 202, 209, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997) (citation omitted). However, the canon requiring a court to give effect to each word if possible is sometimes offset by the canon that permits a court to reject words as surplusage if inadvertently inserted or if repugnant to the rest of the statute. <u>Chickasaw Nation v. U.S.</u>, 534 U.S. 84, 122 S.Ct. 528, 535, 151 L.Ed.2d 474 (2001) (citation and internal quotations omitted). Canons are not mandatory rules; they are guides that need not be conclusive. <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 115, 121 S.Ct. 1302, 1309, 149 L.Ed.2d 234 (2001). They are designed to help judges determine legislative intent as embodied in particular language, but other circumstances evidencing congressional intent can overcome their force. <u>Chickasaw Nation</u>, 122 S.Ct. *at* 535.

Federal courts regularly turn to general and technical dictionaries to determine the plain meaning of a word or phrase. <u>Oneida Tribe of Indians of Wisconsin v. State of Wisconsin</u>, 951 F.2d 757, 761 (7th Cir. 1991), *citing* <u>American Textile Manufacturers Institute, Inc. v. Donovan</u>, 452 U.S. 490, 508-09, 101 S.Ct. 2478, 2490, 69 L.Ed.2d 185 (1981) (citing Webster's Third New International Dictionary and The Oxford English Dictionary); <u>Yockey v. Horn</u>, 880 F.2d 945, 949 (7th Cir. 1989) (citing Black's Law Dictionary and The American Heritage Dictionary).

In the Oxford English Dictionary, the verb "derive" is defined

as, "to flow, spring, issue, emanate, come, arise, originate, have its derivation from, rather than out of a source." Oxford English Dictionary, (2d ed., 1989); *http://dictionary.oed.com/cgi/entry/50061551?single=1&query_type=word&queryword=derive&first=1&max_to_show=10*. Debtor's position is somewhat buttressed by this definition inasmuch as the definition could be read to suggest that the income must not only be received, but must flow from or emanate from, i.e. be earned from, work, service, or action occurring within the prescribed six-month period.

In the Merriam-Webster online dictionary, "derive" is defined as, "to take, receive, or obtain especially from a specified source". *http://www.merriam-webster.com/dictionary/derive*. This definition tends to support the Trustee's position that the inclusion of the term "derived" in the definition adds nothing and provides no additional criterion in order for "income received" during the prescribed six-month period to constitute "current monthly income".

The definitions of the term "derive" quoted above lend some credence to both parties' positions, and a creditable argument can be made and has been made by both parties in this case.

Unquestionably, the grammatical structure of the statutory phrase which the Court must interpret here is problematic. When one excises (i) the parenthetical phrase "(or in a joint case the debtor and the debtor's spouse receive)" and (ii) the modifying

-10-

clause "without regard to whether such income is taxable income", the provision reads as follows: "The term 'current monthly income' means the average monthly income from all sources that the debtor receives derived during the 6-month period. . ." Obviously, the placement of the word "derived" immediately after "receives" leads one to question the drafter's purpose and intent behind the chosen phraseology. Either the inclusion of the term "derived" is superfluous because it is synonymous with the term "receives" (or "received" for tense consistency), or the drafter created an additional criterion for what constitutes "current monthly income" without providing much clarity or any explanation for why a substantive provision was added in such an awkward manner.

In their respective briefs filed herein, neither the Trustee nor Debtors' counsel was able to identify a single case which has analyzed the specific issue before the Court, which is what, if anything, does the inclusion of the phrase "derived during" add to or alter in the definition of "income . . . that the debtor receives". The Court has conducted its own research on the issue and has not discovered any published cases which have decided the specific issue before the Court. However, in <u>In re Kelton</u>, 389 B.R. 812 (Bankr. S.D. Ga. 2008), debtor's counsel made the same argument as made by Debtors herein. The court acknowledged, but did not decide, the issue:

> Counsel argues the definition of "derive" is "to take or receive, especially from a source." *Webster's Third New*

-11-

> *International Dictionary* 608 (2002).  Debtor's counsel
> further notes the etymology of "derive" is from Latin
> "de" and "rivare," meaning literally "of the stream."
> <u>Id.</u>  Thus, in counsel's view, the income must not only be
> actually received during the six month period to be
> included in the CMI calculation, the *source* of the income
> also must occur in the period.  In other words, income
> must be received *and* earned during the six month period.

<u>Id.</u> *at* 817.  The issue was not resolved by the court in <u>Kelton</u> because the court found that the debtor's income coincided with services rendered to his employer, so "any possible distinction between 'received' and 'derived' does not apply in the current case."  <u>Id.</u>

Trustee's position finds some support in <u>In re Cruz</u>, 2008 WL 3346583 (Bankr. E.D. Wis. Aug. 11, 2008), which states that whether income is included on Form B22 is determined by when the debtor receives funds, not when they are earned.  <u>Id.</u> *at* *2.  It does not appear, however, that the <u>Cruz</u> court directly considered the relevance of the inclusion of the word "derived" in the statute.

Also supporting the Trustee's argument herein is <u>In re Sanchez</u>, 2006 WL 2038616 (Bankr. W.D. Mo. July 13, 2006), in which the court interpreted the plain language of §101(10A) utilizing the Merriam-Webster Online Dictionary (*http://www.merriamwebster.com*) thus:

> "Income is "a gain or recurrent benefit usually measured
> in money that derives from capital or labor."  "Received
> means "to come into possession of" or "acquire."  And,
> "derived" is largely redundant of "received," meaning "to
> take, receive, or obtain especially from a specified
> source."

-12-

Id. *at* *2.

Debtors' position finds some support in In re Celedio, 2008 WL 2557475 *at* *1 (Bankr. N.D. Cal. June 23, 2008) ("current monthly income" means "pay received for work performed in the [prescribed] six-month period"). As with the Cruz decision, however, the Celedio court does squarely analyze the significance, if any, of the use of the both "received" and "derived" in the statute.

Based upon the befuddling grammatical structure of the statute itself, the arguably discrepant dictionary definitions of the term "derive" set forth above, and the variant interpretations and conclusions found in the few cases that have even acknowledged the issue, the Court finds that the statutory definition of "current monthly income" is, in fact, ambiguous. Consequently, examination of the legislative history of the statute is the appropriate next analytical step. *See* Kelly, 801 F.2d 269 *at* 270.

The legislative history refers specifically to "current monthly income" as "a defined term" and sets forth the definition as follows:

> "[T]he average monthly income from all sources that the debtor receives (or, in a joint case, the debtor and the debtor's spouse receive), without regard to whether it is taxable income, in the six-month period preceding the bankruptcy filing. . . ."

H.R. REP. 109-31(I), 109th Cong., 1st Sess. 2005, 2005 U.S.C.C.A.N. 88, 99 n.60.

In the section-by-section analysis and discussion of BAPCPA,

-13-

the legislative history, in its only other direct definitional reference to "current monthly income", states as follows:

> Section 102(b) of the Act amends section 101 of the Bankruptcy Code to define "current monthly income" as the average monthly income that the debtor receives (or in a joint case, the debtor and debtor's spouse receive) from all sources, without regard to whether it is taxable income, in a specified six-month period preceding the filing of the bankruptcy case.

Id. *at* 122.

The legislative history only makes reference to when income is received; nowhere is reference made to when the income is earned. The phrase "derived during" is completely absent. Thus, the legislative history appears to strongly suggest that Congress did not intend to create an additional factor for, or further limiting criterion to, the definition of "current monthly income". Hence, this Court concludes that the "derived during" phrase found its way into the statutory language simply as a result of poor sentence construction and inartful drafting. Because the "derived during" phrase appears to be surplusage adding nothing substantive to the definition of "current monthly income", the Court believes it would be improper to impart meaning to the language.

For the reasons set forth above, the Court concludes that the definition of "current monthly income" as set forth in 11 U.S.C. §101(10A) refers to income received during the prescribed six-month period, and that no additional criterion that the income actually be earned during that period exists or was intended when BAPCPA was

drafted and enacted.  Accordingly, Trustee's Objection to Chapter 13 Plan and Objection to Debtors' Form B22C must be sustained.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###