**SIGNED THIS: June 29, 2009**

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

In Re                              )
                                   )   In Bankruptcy
RICHARD R. BURRELL and             )
VICKY L. BURRELL,                  )   Case No. 08-71716
                                   )
        Debtors.                   )

# O P I N I O N

Before the Court for confirmation is a Chapter 13 Plan ("Plan") filed by Richard R. Burrell and Vicky L. Burrell ("Debtors"). John H. Germeraad, Chapter 13 Trustee ("Trustee"), has objected to confirmation of the Plan because the Plan's duration is 36 months. The Trustee asserts that, because the Debtors have "over-the-median" current monthly income, they are required to propose a plan with a five year duration notwithstanding the fact that they have no projected disposable

-1-

income which they must commit to pay unsecured creditors during that time.  For the reasons set forth herein, the Trustee's objection will be overruled and the Debtors' Plan will be confirmed as filed.

Debtors filed their voluntary petition under Chapter 13 of the Bankruptcy Code on July 17, 2008.  With their Chapter 13 petition, the Debtors filed their Plan.  The Plan provides for the Debtors to pay $150 per month for 36 months, resulting in total payments to the Trustee of $5400.  In the Plan, the Debtors propose that the Trustee pay a priority debt to the Internal Revenue Service ("IRS") in the amount of $2000, the balance due on their attorney fees of $2250, and trustee fees as allowed by law.  After the payment of all of these amounts, Debtors estimate that $610 will be left for distribution on allowed unsecured claims.

With their petition, Debtors also filed the required Official Form B22C - Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("B22C").  The Trustee objected to the Debtors' B22C, and specifically objected to the Debtors' calculation of current monthly income at Part I of the B22C.  At Part I, the Debtors were required to disclose their average monthly income for the six calendar months prior to the case filing.  *See* 11 U.S.C. §101(10A)(A).  The Trustee complained that the Debtors did not include all of their income at Part I and that their failure to do so resulted in inaccurate

calculations at Parts II and III of the B22C. The Debtors responded by asserting that they were required to include at Part I only income which was both received during the six month period and derived from labor performed during that period. Thus, Debtors argued that income received during the six month period which was derived from labor performed before the period commenced could be excluded.

After the parties briefed the issue, this Court entered an Opinion on December 11, 2008, finding that the definition of "current monthly income" includes all income received during the six month period preceding a case filing and that the use of the word "derived" in the statute is surplusage. *See* In re Burrell, 399 B.R. 620, 627 (Bankr. C.D. Ill. 2008). The Court also entered an Order on that same date sustaining the Trustee's objection to the Debtors' B22C and requiring the filing of an amended B22C and an amended plan.

The Debtors filed their amended B22C on January 12, 2009, and on January 14, 2009, filed a motion seeking additional time to file an amended plan. The Court granted the Debtors a short extension of time and, on January 21, 2009, the Debtors filed a motion requesting that a confirmation hearing be set on their original Plan. In that motion, the Debtors asserted that, notwithstanding the calculations on their amended B22C, their original Plan met all requirements for confirmation and should be confirmed.

The confirmation hearing on the Plan was held on February 5, 2009.  At the hearing, the Debtors acknowledged that their revised current monthly income on their amended B22C was over the median income for a family of similar size in Illinois.  They also, therefore, acknowledged that at Part II of their amended B22C, they had calculated their "applicable commitment period" to be five years.  *See* 11 U.S.C. §1325(b)(4).  Debtors asserted, however, that because their amended B22C established that they have no disposable income to commit to their Plan payments, the requirement of a five year applicable commitment period is not meaningful and their 36-month Plan should be confirmed.  The Trustee objected, arguing that under all circumstances, "over-the-median" income debtors with five year applicable commitment periods must file plans with a temporal duration of five years.  The parties have now fully briefed this issue and the matter is ready for decision.

The term "applicable commitment period" was introduced into the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  Section 1325(b)(1) provides that, if a trustee or unsecured creditor objects to the confirmation of a Chapter 13 plan, the plan may only be confirmed if a debtor proposes to pay all unsecured claims in full or if "the plan provides that all of the debtor's projected disposal income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the

plan." 11 U.S.C. §1325(b)(1).

Section 1325(b)(4) defines "applicable commitment period" by stating that a debtor's applicable commitment period shall be either "3 years" or "not less than 5 years" if the debtor's current monthly income as defined by statute exceeds the median income of a similarly sized family in the debtor's state. 11 U.S.C. §1325(b)(4). Here, Debtors acknowledge that after re-computing their current monthly income on their amended B22C, their current monthly income is "over-the-median" and, therefore, their applicable commitment period is five years. What Debtors dispute is that §1325(b)(1) or (4) requires them to remain in their Chapter 13 case for a temporal period of five years when they can otherwise complete their Plan in a shorter period of time.

A number of courts have reviewed the question of whether an applicable commitment period is a temporal requirement that imposes a minimum duration for plan payments, or whether it is in the nature of a multiplier used to calculate a monetary amount that must be paid to unsecured creditors through a plan. As Debtors point out in their brief, the case law is divided into three distinct lines.

One line of cases holds that an "over-the-median" income debtor with a five year applicable commitment period who is proposing to pay unsecured creditors anything short of a 100% dividend must, under all circumstances, propose a plan with a

temporal duration of five years. *See, e.g.,* In re Frederickson, 545 F.3d 652 (8th Cir. 2008); In re Nance, 371 B.R. 358 (Bankr. S.D. Ill. 2007); In re Slusher, 359 B.R. 290 (Bankr. D. Nev. 2007); In re Schanuth, 342 B.R. 601 (Bankr. W.D. Mo. 2006).

A second line of cases holds that, although debtors with five year applicable commitment periods must generally propose plans with a five year temporal duration, that requirement does not apply when a debtor has no projected disposable income which must be committed to pay unsecured creditors. *See, e.g.,* In re Kagenveama, 541 F.3d 868 (9th Cir. 2008); Musselman v. eCast Settlement Corp., 394 B.R. 801 (E.D. N.C. 2008); In re Davis, 392 B.R. 132 (Bankr. E.D. Pa. 2008); In re Alexander, 344 B.R. 742 (Bankr. E.D. N.C. 2006).

The third line of cases holds that an applicable commitment period is a multiplier used to calculate the aggregate amount of a debtor's projected disposable income which must be committed to pay unsecured creditors through a plan and does not create a minimum term for the duration of a plan. *See, e.g.,* In re Lopatka, 400 B.R. 433 (Bankr. M.D. Pa. 2009); In re Mathis, 367 B.R. 629 (Bankr. N.D. Ill. 2007); In re Swan, 368 B.R. 12 (Bankr. N.D. Cal. 2007); In re Brady, 361 B.R. 765 (Bankr. D. N.J. 2007).

Generally, the different holdings in the three lines of cases are the result of conflicting interpretations of §1325(b)(1) and (4). When interpreting a statute, a court must look to the

statutory language itself and attempt to discern its plain or clear meaning. *See* Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391(1992); Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). That seems a daunting task here when so many courts have previously endeavored to determine the plain meaning of the term "applicable commitment period" and have come up with such a wide range of thoughtful and well-reasoned, but conflicting, views. However, the task is aided by the premise of statutory construction that plain or clear meaning comes not only from the statutory language itself, but also from consideration of the language within the context that it is used and the broader context of the statute as a whole. *See* Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992); Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

Section 1325(b)(4) states that "for purposes of this subsection" - presumably all of §1325(b) - the "applicable commitment period . . . shall be" three years or, under the circumstances described, not less than five years. 11 U.S.C. §1325(b)(4). The provision goes on to state that the applicable commitment period may be less than the applicable three or five years only if allowed unsecured claims are to be paid in full through the plan. Id. Nowhere in this provision is there any

language which imposes any duty on a debtor to make payments or do anything else during the applicable commitment period. Rather the term is simply explained for purposes of construing the term's use in §1325(b)(1).

This reading of §1325(b)(4) is consistent with its context within the statute and with the statutory provision as a whole. As set forth above, when a trustee or unsecured creditor objects to a plan that does not propose a 100% dividend to unsecured creditors, §1325(b)(1)(B) imposes a duty upon a debtor to propose to pay his projected disposable income to be received during his applicable commitment period to unsecured creditors in order to obtain plan confirmation. Section 1325(b)(2) provides an explanation of how to calculate that disposable income. Section 1325(b)(3) explains the term "reasonable and necessary expenses" used to calculate that disposable income. Section 1325(b)(4) explains the term "applicable commitment period." Read as a whole, §1325(b)(1) is the operative, substantive provision, and §1325(b)(2), (3), and (4) are definitional in nature and supply meaning to the terms used in §1325(b)(1). Sections 1325(b)(2), (3), and (4) do not create any additional obligations for a debtor in and of themselves.

Having determined that §1325(b)(4) does not mandate minimum plan length, an analysis must be made of §1325(b)(1)(B) to determine whether the use of the term "applicable commitment period" there creates a minimum plan length requirement.

The concept of a debtor having to commit to paying his projected disposable income to unsecured creditors in order to obtain confirmation of a Chapter 13 plan was introduced into the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984. Under prior law, payments to unsecured creditors had to be substantial or meaningful. *See* <u>In re Smith</u>, 848 F.2d 813, 820 (7th Cir. 1988). After the 1984 amendments to §1325(b), however, plan confirmation could be achieved with minimal or no payments proposed for unsecured creditors provided that the new, so-called "ability to pay" test had been met. <u>Id.</u>

BAPCPA has added a number of new terms and concepts to the calculation of a debtor's projected disposable income. The basic concept, however, does not appear to have been altered from pre-BAPCPA law. Section 1325(b)(1)(B) still requires the calculation of the amount of disposable income that a debtor must commit to pay unsecured creditors through a Chapter 13 plan in order to obtain confirmation. Projected disposable income is calculated as an aggregate sum or "pot" of money to be paid *pro rata* to unsecured claimants through plan payments. *See* <u>In re Witkowski</u>, 16 F.3d 739, 746 n.11 (7th Cir. 1994).

There is little dispute that the current BAPCPA version of §1325(b)(1)(B) does not depart from the pre-BAPCPA purpose of calculating the amount, if any, of money which must be committed to the payment of unsecured creditors to obtain confirmation. A

monthly amount of projected disposable income is calculated according to other applicable Code provisions and then that amount is multiplied by the number of months in the applicable commitment period to obtain the aggregate sum to be paid. *See* Frederickson, 545 F.3d *at* 658.

As used in §1325(b)(1)(B), there is no question but that the applicable commitment period is a temporal reference. But because it is used only as a multiplier in the statutory formula, it is not a temporal requirement. *See* Lopatka, 400 B.R. *at* 440.

Here, Debtors are proposing to pay the IRS, their attorney, and the Trustee as required. There is no dispute that their monthly projected disposable income is a negative number. Thus, there is also no dispute that they are not required to propose to pay any amount to unsecured creditors in order to obtain confirmation of their Plan. The amount that they are proposing to pay unsecured creditors is completely gratuitous. The Debtors have established the feasibility of their Plan by filing a Schedule J showing that they intend to live on a budget which includes less for living expenses than they would be allowed to spend as reasonable and necessary expenses per the required statutory calculation of their disposable income. *See* 11 U.S.C. §1325(b)(3).

If required to amend their Plan to provide for a five year duration, Debtors could reduce their monthly payment amounts to the Trustee so that the same aggregate amount would be paid over the

longer duration.  This would mean that the IRS and Debtors' attorney would get smaller distributions each month than now proposed and would bear the loss of the time value of money by reason of the deferral of the payments to them.  But, the Code does not require the Debtors to stretch out payments to the IRS and their attorney for five years.  The applicable commitment period, under any interpretation, applies only to the treatment of general unsecured creditors.  *See* 11 U.S.C. §1325(b)(1).  There is, therefore, simply no basis to deny confirmation of a Chapter 13 plan which proposes to pay priority and administrative claims sooner rather than later.  The Code does not require the IRS to be paid at a slower pace than Debtors are willing and able to pay simply to ensure that the case stays open for five years on the chance that Debtors will have a significant increase in income and can then be required to modify their Plan to pay more to unsecured creditors.

Another option for Debtors, if required to file a plan with a five year duration, would be to propose payments for the first 36 months to pay priority and administrative claims and then propose no payments for the remaining 24 months.  This would seem technically to satisfy the Trustee's objection but, as other courts have pointed out, would be meaningless.  Once the last required payment was made in month 36, the plan could no longer be modified, and keeping it open would not provide a benefit to anyone.  *See* 11

U.S.C. §1329(a); Mathis, 367 B.R. *at* 634.

At the hearing on February 5th, the Court invited the Trustee to address the practical implications of requiring the Debtors to amend their Plan to provide for a five year duration. The Trustee acknowledged that it made no particular sense to stretch out the payments to the IRS over five years and agreed that §1329 prohibits amending a plan after the last payment has been made. The Trustee promised to consider these issues and discuss them in his brief. The Trustee did not, however, include any discussion of these practical issues in his brief.[1]  Thus, the Court can only conclude that the Trustee has no practical justification for raising an objection under §1325(b)(1) in this case.

Having closely reviewed the language of both §1325(b)(1) and (4), this Court finds that neither provision mandates that a debtor's applicable commitment period requires the filing of a plan with a particular temporal duration. A debtor's applicable

---

[1] The Trustee did raise one practical issue in his brief by complaining that allowing plans of short temporal duration could result in a debtor receiving a discharge before a trustee has a chance to question the debtor at a §341(a) first meeting of creditors ("first meeting"). This complaint by the Trustee has no merit. A first meeting in a Chapter 13 case should be scheduled between 20 and 50 days after a case filing. 11 U.S.C. §341(a); Fed.R.Bankr.P. 2003(a). A hearing on confirmation of a proposed plan may not be scheduled earlier than 20 days after the first meeting. A discharge issues only after a debtor completes payments pursuant to the terms of a confirmed plan. 11 U.S.C. §1328(a). A trustee will, therefore, always have an opportunity to conduct a first meeting and object to confirmation of a proposed plan before a discharge may issue.

commitment period is used at §1325(b)(1) solely as a multiplier to calculate a debtor's aggregate projected disposable income which must be committed to pay unsecured creditors.  Thus, for the reasons set forth above, the Debtors' Chapter 13 Plan will be confirmed over the objection of the Trustee.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###